# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHAWN PETRO, *et al.*, on behalf of
themselves and all others similarly situated,

                  Plaintiffs,

        v.

FCA US LLC,

                  Defendant.

C.A. No. 22-0621-GBW

---

Jason Z. Miller, Kelly A. Green, SMITH, KATZENSTEIN, & JENKINS LLP, Wilmington, DE; Russell D. Paul, Abigail J. Gertner, Amey J. Park, Natalie Lesser, BERGER MONTAGUE PC, Philadelphia, PA; Cody R. Padgett, Laura E. Goolsby, Tarek H. Zohdy, CAPSTONE LAW APC, Los Angeles, California; Geoff S. Stahl, Rachel A. Bentley, Steven G. Calamusa, GORDON & PARTNERS, P.A., Palm Beach Gardens, FL; Jason H. Alperstein, Kristen L. Cardoso, KOPELOWITZ OSTROW FERGUSON EISELBERG GILBERT, Fort Lauderdale, FL

       *Counsel for Plaintiffs*

Patrick Brannigan, Scott H. Morgan, Stephen A. D'Aunoy, ECKERT SEAMANS CHERIN & MELLOTT LLC, Wilmington, DE

       *Counsel for Defendant*

## MEMORANDUM OPINION

August 16, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Defendant FCA US LLC's ("FCA") Motion to Dismiss Plaintiff Shawn Petro, et al.'s ("Plaintiffs"), First Amended Class Action Complaint (D.I. 24, the "Complaint"). D.I. 28. For the reasons set forth below, FCA's motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.    BACKGROUND

FCA is a vehicle manufacturer. Among other products, FCA manufactures and advertises the vehicles that are the subject of this suit: "all Dodge-, RAM-, Jeep-, and Chrysler-branded vehicles, model years 2014 to present, equipped with a Gen III 5.7-liter HEMI or 6.4-lite HEMI 392 engine" (the "Class Vehicles"). D.I. 24 ¶ 224.

The named plaintiffs have each purchased one of the Class Vehicles. *Id.* ¶ 24. Plaintiffs allege that the Class Vehicles have a design flaw that makes those vehicles dangerous to operate. Specifically, Plaintiffs contend that the Class Vehicles incorporate FCA's Multi-Displacement System valve-train-system technology (the "System"). *Id.* ¶ 4. Plaintiffs allege that the design, manufacturing, material, and workmanship of the System is flawed, and those flaws cause the "lifters, camshafts, rocker arms, valve springs, and other related components" of the Class Vehicles' "Gen III 5.7-liter HEMI" and "6.4-liter HEMI 392" engines to malfunction and fail prematurely (the "Defect"). *Id.* ¶ 7. Plaintiffs further contend that FCA was aware of the Defect but actively concealed it from Plaintiffs and certain dealerships that sell FCA-manufactured vehicles. *Id.* ¶ 14.

The named plaintiffs are Stephen Freischlag, Orlando Garcia, David Kinchen, Shawn Petro, and Troy Stallings.

Stephen Freischlag is a New Hampshire resident who purchased a new 2017 RAM 1500. *Id.* ¶¶ 53. At 80,552 miles, Freischlag took his vehicle to a dealership to diagnose the cause of the ticking sound coming from the engine. *Id.* ¶ 61. The technician found that the valve lifters were twisted, and replaced them. *Id.* At 82,133 miles, Freischlag returned to the dealership because the ticking noise was louder, and the technician replaced the exhaust manifold gasket. *Id.* ¶ 62.

Orlando Garcia is a Texas resident who purchased a new 2016 RAM 1500. *Id.* ¶¶ 66-67. At around 57,597 miles, Garcia took his vehicle to the dealership because a loud clicking noise was coming from the hood and the vehicle was shaking. *Id.* ¶ 75. The dealership found that an intake valve spring and a pushrod were bent, and replaced those components. *Id.* Garcia's vehicle still ticks. *Id.*

David Kinchen is a Louisiana resident who purchased a new 2016 RAM 1500. *Id.* ¶¶ 79-80. He noticed that the engine and the lifters were tapping a day after purchasing that vehicle. *Id.* ¶ 88. He called the dealership, who told him that the issues with the lifters were normal. *Id.* At around 15,252, 15,304, and 15,494 miles, Kinchen took his vehicle to a dealership and asked the dealership to diagnose the vehicle's excessive engine noise. *Id.* ¶¶ 89-90. The dealership told him that his vehicle was operating as intended each time. *Id.*

Shawn Petro is an Illinois resident who purchased a new 2020 RAM 2500. *Id.* ¶¶ 94-95. At about 7,000 miles, Petro "heard ticking noises coming from the engine." *Id.* ¶ 103. He took the vehicle to a dealership, who told him those sounds were normal. *Id.* At 19,191 miles, the dealership replaced the lifters. *Id.* ¶ 105.

3

Troy Stallings is an Illinois resident who purchased a new 2014 RAM 3500. *Id.* ¶¶ 110-11. At 70,732 miles, the engine failed while driving and a third-party dealership installed a new long block. *Id.* ¶ 119.

Plaintiffs filed this action, seeking national class-certification for all purchasers of an Asserted Vehicle. Plaintiffs also seek certification for four (4) state-based subclasses for purchasers of an Asserted Vehicle in those states, namely: Illinois, Louisiana, New Hampshire, and Texas.[1] On behalf of the nationwide class, Plaintiffs allege fraudulent concealment, unjust enrichment, and violation of the Magnuson Moss Warranty Act ("MMWA"). On behalf of the state subclasses, Plaintiffs allege violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), Louisiana Product Liability Act ("LPLA"), and Texas Deceptive Trade Practices Act ("TDTPA"), as well as claims for breach of express and implied warranties.

FCA filed a motion to dismiss Plaintiffs' First Amended Complaint on October 14, 2022 and, *inter alia*, contends that (1) Plaintiffs lack standing to assert a nationwide class, and lack standing to pursue claims for vehicles they did not purchase; (2) some of Plaintiffs' claims are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) and fail to meet that standard, (3) Plaintiffs' unjust enrichment claim fails because of an express warranty, (4) Plaintiffs' express warranty claim fails because Plaintiffs are suing over a non-covered design defect, (5) Plaintiffs' implied warranty claims fail because the Class Vehicles are merchantable, (6) Plaintiffs' MMWA claim fails because Plaintiffs' implied and express warranty claims fail, and (7) Plaintiffs' LPLA claim is time-barred.

---

[1] The Complaint initially stated claims under Oklahoma and Ohio law and sought to certify Oklahoma and Ohio classes. Plaintiffs voluntarily dismissed without prejudice those claims. D.I. 73; D.I. 81.

## II.    LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

## III.    DISCUSSION

### A.    Plaintiffs Have Standing to Bring Claims on Behalf of Purchasers of All Class Vehicles

FCA contends that Plaintiffs lack standing to assert claims for cars that they did not purchase (the "Unpurchased Vehicles"). D.I. 29 at 5. Together, Plaintiffs have purchased model-year 2014 Ram 3500, 2016-2017 Ram 1500, and 2020 Ram 2500 vehicles. D.I. 24 ¶¶ 26, 38, 53,

67, 80, 95, 111. The Class Vehicles, however, include vehicles that Plaintiffs have not purchased such as Chryslers, Dodges, Jeeps, and other model Rams. *Id.* at ¶ 1 n. 1.

Plaintiffs argue that they have standing to assert claims for all Class Vehicles because each Class Vehicle is equipped with the same V8 engine that integrates FCA's Multi-Displacement System. D.I. 38 at 2-3. Specifically, Plaintiffs allege that the Asserted Vehicles contain a Gen III 5.7-liter HEMI or 6.4-liter HEMI 392 V-8 engine. D.I. 24 ¶¶ 4. Plaintiffs further contend that those engines are based on the same design and use the same camshafts and liners. *Id.* ¶¶ 129-141. As a result, Plaintiffs argue that "the 5.7-liter HEMI and 6.4-liter HEMI V-8 engines are the same for purposes of this litigation," and that each of the Class Vehicles, including the Unpurchased Vehicles, share the same defect. *Id.* ¶ 141.

The Court considered a nearly identical issue in *Maugain v. FCA US LLC*, No. CV 22-116-GBW, 2023 WL 1796113 (D. Del. Feb. 7, 2023) and *Bolton v. Ford*, No. CV 23-632-GBW, 2024 WL 3328522 (D. Del. July 8, 2024). In both cases, the named plaintiffs pursued product defect claims against vehicle manufacturers covering a group of class vehicles, including some models that no named plaintiff had ever purchased. *Bolton*, 2024 WL 3328522, at *6 (analogizing to *Maugain*). And in both cases the Court found that plaintiff's allegations stemming from a defective engine were sufficient to show that all plaintiffs "purchased the same product, i.e. the engine at issue, as a component of their Class Vehicle" and denied a motion to dismiss on standing. *Id.* (internal quotation omitted).

Plaintiffs in this case allege that all Class Vehicles are equipped with one of two engines, each with the same defect: the Gen III 5.7-liter HEMI or the 6.4-liter HEMI 392 V-8 engine. D.I. 24 ¶¶ 4, 129-141. Plaintiffs allege that at least one named plaintiff has purchased a vehicle containing each engine. *Id.* ¶¶ 26, 38, 53, 67, 80, 95, 111. When accepted as true, these allegations

establish that the putative class members, including those who purchased vehicles not purchased by any named plaintiff, all purchased the same products: the engines at issue. Thus, at this time, the Court finds that the named Plaintiffs have standing to bring claims involving the Unpurchased Vehicles. Of course, Plaintiffs have an ongoing obligation to maintain standing for the entirety of the case, and FCA will have an opportunity to raise relevant differences within the proposed class at the class certification stage. For now, however, the Court will allow Plaintiffs to continue pursuing claims on behalf of all alleged Class Members, and FCA's motion to dismiss Plaintiffs' claims against the Unpurchased Vehicles for lack of standing is DENIED.

**B.    Plaintiffs' Fraud-Based Claims are Well-Pleaded**

FCA asks the Court to dismiss Counts I, IV, VIII, IX, and XV of Plaintiffs' Complaint (the "Fraud-Based Claims"). D.I. 29 at 6.

**1.    Plaintiffs Have Adequately Pleaded Fraud Under Rule 9(b).**

FCA argues that the Court should dismiss each of the Fraud-Based Claims because Plaintiffs have not (1) adequately pleaded that FCA made a material misrepresentation, omission or concealment of fact; (2) shown reliance on a statement made by FCA; and (3) shown FCA knew about the alleged defect of the Class Vehicles prior to selling those vehicles to Plaintiffs. *Id.* Under Rule 9(b), a party asserting a fraud claim must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must allege "the who, what, when, where, and how of the events at issue." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (internal citations omitted). However, "the requirement of particularity does not require an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated the alleged

7

fraud and reasonably believes that a wrong has occurred." *Household Int'l, Inc. v. Westchester Fire Ins. Co.*, 286 F.Supp.2d 369, 373 (D. Del. 2003) (internal citation and quotation omitted).

Here, the Complaint pleads specific facts to support Plaintiffs' fraudulent misrepresentation claims by citing specific advertisements and brochures (the "where" and "when") in which FCA (the "who") touted the reliability, capability, and durability of the System (the "what" and "how"). D.I. 24 ¶¶ 152-170; *see also Bolton*, 2024 WL 3328522, at *8-9 (finding that allegations that marketing directed to the "driveability and efficiency" of defective vehicles was fraudulent sufficient to pass Rule 9(b)). Plaintiffs plead that the individual plaintiffs reviewed the advertisements and relied upon the affirmative misrepresentations. D.I. 24 ¶¶ 31, 43, 58, 72, 85, 100, 116. Plaintiffs also allege that rather than being "capable over the long run" the Class Vehicles stop functioning. D.I. 24 ¶ 9. Thus, Plaintiffs have alleged that FCA made affirmative misrepresentations.

Plaintiffs have also adequately pleaded omissions and concealment. While omission claims are also subject to Rule 9(b)'s particularity requirements, the pleading standard is relaxed for fraudulent omissions because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Robinson v. Gen. Motors LLC*, No. CV 20-663-RGA-SRF, 2021 WL 3036353, at *4 (D. Del. July 19, 2021), *report and recommendation adopted*, No. 1:20-CV-00663, 2021 WL 7209365 (D. Del. Nov. 30, 2021) (internal citations omitted); *see also* Restatement (Third) of Torts: Liab. for Econ. Harm § 13, cmt. d (2020) (requiring only (1) "that the fact at issue was basic to the transaction[,]" (2) "a legitimate reason to rely on" the entity that failed to disclose, and (3) that the claimant could not have discovered the issue). Moreover, in product liability cases, courts typically assume that the omitted information was material to the

8

plaintiff's decision to purchase the product if the "[a]lleged defects [] create[s] 'unreasonable safety risks[.]'" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).

Here, Plaintiffs allege that FCA omitted any pre-sale mention of the Defect, its nature, and its causes. D.I. 24 ¶¶ 4-10, 142-151. Plaintiffs plead that they reviewed advertising material, relied on the omission, and would not have purchases their vehicles or would have paid less had the Defect been disclosed. *Id.* ¶¶ 31, 43, 58, 72, 85, 100, 116. Plaintiffs allege that FCA had exclusive and superior knowledge of the Defect and that it was not known or reasonably discoverable by Plaintiffs. *Id.* ¶¶ 181-82. Plaintiffs add that the Defect creates a "serious safety concern" including "[l]oss of power while driving." *Id.* ¶ 16. Taken together, these allegations are sufficient to state a claim of fraudulent omission.

Because Plaintiffs allege that the Defect caused safety concerns, the Court will assume that FCA's omission was material to each Class Member's decision to purchase their respective vehicles. Further, given Plaintiffs' claims that FCA had superior and exclusive knowledge of the Defect, *id.*, the Court finds Plaintiffs' allegations sufficient to support their fraud-by-omissions claims. *Robinson*, 2021 WL 3036353, at *4.

### 2.   Plaintiffs Adequately Allege That FCA Had Pre-Sale Knowledge of the Defect

FCA contends that Plaintiffs' fraud claims should be dismissed for the additional reason that Plaintiffs failed to plead that FCA had pre-sale knowledge of the Defect before it sold Class Vehicles to Plaintiffs by November 2014. D.I. 29 at 8. Plaintiffs respond that FCA's pre-sale knowledge can be inferred from Plaintiffs' allegations that FCA: (1) issued a STAR Case Report in September 2017 (D.I. 24 ¶ 194-87); (2) received complaints that consumers submitted to the National Highway Transportation Safety Administration ("NHTSA") regarding the Defect (D.I.

9

24 ¶¶ 201-05); and (3) conducted internal testing both pre-release and in response to consumer

complaints (D.I. 24 ¶¶ 179-93).  D.I. 38 at 6-8.  For the following reasons, the Court agrees with

Plaintiffs that their allegations, taken in concert, are sufficient to impute pre-sale knowledge to

FCA.

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally." Fed. R. Civ. P. 9(b).  "Although Rule 9(b) permits knowledge to be

averred generally, plaintiffs must still plead the events which they claim give rise to an inference

of knowledge." *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987).

With respect to the STAR Case Report, FCA contends that it was issued well after every

Plaintiff other than Petro had purchased their vehicles.  D.I. 29 at 8-9.  While the Court

recognizes that some Plaintiffs purchased vehicles before FCA issued the 2017 STAR Case

Report, this fact alone does not defeat Plaintiffs' claims that the 2017 STAR Case Report

evidences FCA's pre-sale knowledge.  Indeed, courts have recognized that service bulletins

"issued post-sale [may] support an inference of the seller's pre-sale knowledge of a defect."

*Robinson*, 2021 WL 3036353, at *6; *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d

1043, 1058 (C.D. Cal. 2020).  In *Parrish*, the court explained that post-sale service bulletins may

evidence pre-sale knowledge "[b]ecause a manufacturer must receive complaints or data raising

an issue and then must investigate the issue before issuing a" service bulletin.  463 F. Supp. 3d at

1058.  Because this process can span several months, the *Parrish* court found it "reasonable to

infer that manufacturers know of the issue prior to the release of the" service bulletin.  *Id.*  The

Court agrees with the *Parrish* court's reasoning and finds that service bulletins issued post-sale

*may* provide evidence of a manufacturer's pre-sale knowledge.

Nonetheless, the window of time between the sale and the date in which the service bulletin is issued must be reasonable, and a service bulletin "issued long after purchase lends little support to the necessary inference of knowledge." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1094 (N.D. Cal. 2014). In *MacDonald*, the district court found plaintiffs' allegations of pre-sale knowledge plausible where the service bulletins "were issued only five and nine months after the last relevant purchase in this case, and less than two years after the first purchase." *Id.*; *see also Parrish*, 463 F. Supp. 3d at 1058 (finding "a five-month period between knowledge of the Defect and release of the TT to be plausible at this stage"). Similarly, here, the Complaint asserts that the earliest purchases by a named Plaintiff were made in November 2014, approximately three years before the 2017 STAR Case Report, while the last consumer purchase was in April 2021, four years after the 2017 STAR Case Report. D.I. 24 ¶¶ 26, 111. Given the high probability that the STAR Case Report followed months of research and investigation by FCA, the Court finds that Plaintiffs can rely on the post-sale STAR Case Report as one piece of evidence of FCA's pre-sale knowledge of the Defect.

FCA also contends that the 2017 STAR Case Report cannot impute pre-sale knowledge to FCA because of "the discrepancy between Plaintiffs' alleged experiences and the content of the service bulletin." D.I. 42 at 4. The STAR Case Report related to "abnormal engine noise, rough idol, lack of power, [and] misfire[s]" potentially due to "camshaft lobe wear/lifter wear (roller failure) on one or more cam lobes." D.I. 24 ¶¶ 194-98; Ex. F. Plaintiffs complained of a "ticking," "knocking," or "tapping" noise, and identify camshaft lobe/lifter wear as the primary cause. *Id.* ¶¶ 11, 33, 46-48, 61-62, 75-76, 88-90, 103-04, 105-06, 142, 148. Construing these allegations in favor of Plaintiffs, the Court finds that the service bulletin sufficiently relates to the Defect alleged in the Complaint.

As to the NHTSA complaints, FCA contends that the NHTSA complaints do not impute pre-sale knowledge onto FCA because several of the complaints pre-date the purchases, and the symptoms are too distinct from what Plaintiffs experienced. D.I. 29 at 9. Plaintiffs cite NHTSA complaints pre-dating the earliest sale and dating back to 2011. D.I. 24 ¶¶ 201-05. While the Court agrees with FCA that a mere handful of complaints is insufficient, in this case, the Court cannot view the complaints independently from Plaintiffs' remaining allegations regarding FCA's pre-sale knowledge. Rather, at the pleading stage, "courts must consider the complaint in its entirety and determine whether the complaint as a whole contains sufficient factual matter to state a facially plausible claim." *See Robinson*, 2021 WL 3036353, at *7 (finding pre-sale knowledge based on based on GM's service bulletins, consumer complaints and GM's responses thereto, and GM's aggregated internal data, '[t]aken in ... totality'") (internal citations omitted). Thus, here the four (4) NHTSA complaints predating the Plaintiffs' purchases must be viewed alongside FCA's 2017 STAR Case Report. When viewed together with Plaintiffs' detailed allegations of internal testing (D.I. 24 ¶¶ 179-93), the complaints and the 2017 STAR Case Report adequately support Plaintiffs' claims that FCA had pre-sale knowledge of the defect. *See Bolton*, 2024 WL 3328522, at *10-11.

### 3. Plaintiffs Adequately Allege that FCA Had a Duty to Disclose the Defect.

FCA contends that Plaintiffs' state law fraud claims must be dismissed for failure to allege a special relationship of trust that would require disclosure. D.I. 29 at 10. As FCA concedes, Illinois does not require a special relationship of trust. *See* D.I. 42 at 5.[2] On the other

---

[2] FCA's alternative argument that the Illinois Consumer Fraud and Deceptive Business Practices Act requires a specific affirmative communication to be identified is raised only in a footnote

hand, Texas, Louisiana, and New Hampshire require such a relationship. *Palma v. Sonic Momentum VWA, L.P.*, No. CV 4:09-2974, 2010 WL 11652068, at *5 (S.D. Tex. Apr. 16, 2010); *Bottinelli Real Estate, L.L.C. v. Johns Manville, Inc.*, 288 So.3d 179, 185-86 (La.App. 2019); *Sprague Energy Corp. v. Levco Tech Inc.*, 2009 WL 1374593, *9 (D.Conn. 2009).   However, Texas recognizes a duty to disclose safety defects. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *19-20 (D.N.J. May 8, 2017).   Plaintiffs allege a defect impacting safety, creating a risk of injury for all plaintiffs, including one plaintiff whose vehicle actually stalled. D.I. 24 ¶¶ 16, 20, 33, 46-48, 61-62, 75, 99-90, 103-104, 119. Plaintiffs' allegations therefore suffice to create a duty to disclose under Texas law.  New Hampshire recognizes a duty to disclose where one party has superior knowledge of a material fact. *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *19-20.  Louisiana finds a duty to disclose when the defendant makes a partial or incomplete disclosure about its product. *Baudy v. Adame*, 441 F.Supp.3d 293, 299 (E.D. La. 2020).  Plaintiffs' allegations that FCA had superior, exclusive knowledge and failed to disclose a known danger thus suffice to create a duty to disclose under New Hampshire and Louisiana law.  D.I. 24 ¶¶ 28, 31, 40, 43, 55, 58, 69, 72, 82, 85, 97, 100, 113, 116.

> ### 4.     At this Stage, the Court Cannot Find that Plaintiffs' Claims are Time Barred.

FCA contends that Plaintiffs' fraud claims are barred by the applicable statutes of limitations.  D.I. 29 at 10-11.  Plaintiffs respond that the doctrines of delayed accrual or equitable tolling apply.  D.I. 38 at 9.  The Court "may not allocate the burden of invoking [equitable

---

and is thus waived. *See Samsung Elecs. Co. v. Netlist, Inc.*, C.A. No. 21-1453-RGA, 2022 WL 3027312, at *5 (D. Del. Aug. 1, 2022).

tolling] in a way that is inconsistent with the rule that a plaintiff is not required to plead… facts sufficient to overcome an affirmative defense." *Wiggins v. Albert Einstein Med. Ctr.*, 2022 WL 1197015, at *2 (3d Cir. Apr. 22, 2022). Plaintiffs allege that FCA concealed the claims by directing dealers to tell Plaintiffs that the strange noises were normal and required no repairs. D.I. 24 ¶¶ 14, 47, 88, 103. At this stage, this is sufficient to allege fraudulent concealment. *See In re Takata Airbag Prod. Liab Litig.*, 193 F.Supp.3d 1324, 1344 (S.D. Fla. 2016). Similarly, the discovery rule governs several of these statutes of limitations, and when the defect has been discovered is a question of fact that may not generally be decided at the pleading stage. *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014) (the Court may only dismiss a complaint on statute of limitations grounds if it is clear from the face of the claim that the statute of limitations is not met); *Morrison v. Protective Life Ins. Co.*, 2012 WL 4361295 at *4 (N.D. Ill. Sept. 21, 2012) (Illinois incorporates the discovery rule); *Campbell v. CGM, LLC*, 2017 WL 78474, *12 (D.N.H. Jan. 9, 2017) (New Hampshire); *Taylor v. Deutsche Bank AG*, 2014 WL 12586180 at *4-5 (N.D. Tex. Nov. 24, 2014) (Texas). Plaintiffs have pleaded that they did not discover the Defect until between 2017 and 2022. D.I. 24 ¶¶ 61, 75, 89, 119. At this stage, the Court must accept these allegations as true. To the extent that FCA suggests that Plaintiffs should have discovered the Defect via certain public information, the Court may not draw those inferences in favor of Defendant at this stage of the litigation. Thus, the Court will not dismiss Plaintiffs' claims for being time-barred.

5.     **Plaintiffs' New Hampshire Claims Do Not Fail for Lack of Privity.**

In its opening brief, FCA contends that Plaintiffs' New Hampshire claims fail for lack of

privity.[3]  D.I. 29 at 12.  New Hampshire does not require privity where "a duty [to disclose] may

flow to any foreseeable and intended third party beneficiary of the contractual duty." *Nichols v.*

*Gen. Motors Corp.*, 1999 WL 33292839, at *4 (N.H. Super. Dec. 13, 1999).  Plaintiffs have

alleged that they are third-party beneficiaries of such a duty.  D.I. 24 ¶¶ 206-12.  Thus, Plaintiffs'

New Hampshire claims do not fail for lack of privity.

6.     **Plaintiffs' Claims are Not Barred by the Economic Loss Doctrine.**

FCA asks the court to dismiss Plaintiffs' fraudulent concealment claims (Count I) for the

New Hampshire, Louisiana, and Texas subclasses on the grounds that those states apply the

economic loss doctrine.  D.I. 29 at 12.  While Plaintiffs do not dispute that courts in New

Hampshire, Louisiana, and Texas apply the economic loss doctrine, Plaintiffs contend that their

claims survive dismissal because states in those jurisdictions have adopted exceptions to the

economic loss doctrine that apply here.  D.I. 38 at 11-12.

In New Hampshire, the economic loss doctrine does not bar claims of misrepresentation

and fraudulent inducement.  *Wyle v. Lees*, 162 N.H. 406, 411 (2011).  Similarly, Texas courts

have permitted cases of fraudulent omission to be brought notwithstanding the economic loss

doctrine.  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 448 (S.D.N.Y.

2017) (collecting Texas cases).  Plaintiffs allege that FCA concealed material information "for

the purpose of inducing Plaintiffs and Class Members to purchase or lease the Class Vehicles."

---

[3] FCA omits this argument from its reply brief, thus "implicitly conced[ing]" the argument.
*Progressive Sterilization, Ltd. Liab. Co. v. Turbett Surgical Ltd. Liab. Co.*, No. 19-627-CFC,
2020 U.S. Dist. LEXIS 101885, at *4 (D. Del. June 10, 2020)

D.I. 24 ¶ 216. Thus, Plaintiffs' claims under Texas and New Hampshire law are not barred by the economic loss doctrine at this time. To the extent that FCA contends that any fraud was in the performance of the contract, rather than its creation, *see Wyle*, 162 N.H. at 411, FCA has not met its burden at this time. It is plausible, from the face of the complaint, that Plaintiffs' claims go to the inducement of the contract rather than the performance of it.

The Louisiana Products Liability Act ("LPLA") permits plaintiffs to recover for economic losses to the extent that "redhibition does not allow recovery for such damager or economic loss." La. R.S. 9:2800.53(5). LPLA claims may be alternatively pleaded alongside redhibition claims. *Becnel v. Mercedes-Benz USA, LLC*, 2014 WL 1918468, at *6-8 (E.D. La. May 13, 2014). Thus, the Court will not dismiss the LPLA claims at this time.

Accordingly, FCA's Motion to Dismiss Plaintiffs' fraud-based misrepresentation and omissions claims is DENIED.

### C.   Plaintiffs' Unjust Enrichment Claims Are Not Well-Pleaded.

FCA moves to dismiss Plaintiffs' claims for unjust enrichment on grounds that such claims are precluded by the existence of the express warranty. D.I. 29 at 12-14.

Plaintiffs do not dispute that their vehicles' express warranties govern the parties' rights and that they have not pleaded that they do not have adequate remedies at law. *See generally* D.I. 38. "Where plaintiffs did not allege that legal remedies would be inadequate, courts have dismissed the plaintiff's claims for equitable relief." *Bolton*, 2024 WL 3328522, at *19. While "Plaintiffs may seek [equitable] relief as an alternative to legal damages, in doing so, Plaintiffs must allege that legal remedies would not adequately compensate Plaintiffs for their damages." *Id.* Thus, FCA's motion to dismiss Plaintiffs' claims for unjust enrichment must be granted under each of the applicable state laws. Similarly, Plaintiffs must plead that FCA's conduct is not

covered by the express warranties in order to bring an unjust enrichment claim. *See, e.g.*, *Melnick v. Betfair Interactive, LLC*, 563 F.Supp.3d 822, 826 (N.D. Ill. 2021); *Cenac Island, LLC v. River Valley Shipyards, LLC*, 2013 WL 1786641, *4 (E.D. La. 2013); *Wilcox Indus. Corp. v. Hansen*, 870 F.Supp.2d 296, 308 n.3 (D.N.H. 2012); *Adams v. Nissan N. Am., Inc.*, 395 F.Supp.3d 838, 854 (S.D. Tex. 2018).

Plaintiffs request leave to amend. D.I. 38 at 20. FCA does not oppose. *See generally* D.I. 42. The Court will grant Plaintiffs leave to amend to attempt to plead in the alternative allegations (1) that there are not adequate remedies at law; (2) that FCA's conduct is not covered by the express warranties; and (3) that Plaintiffs' unjust enrichment claims are not duplicative of other claims.

Accordingly, FCA's motion to dismiss Plaintiffs' claims for unjust enrichment is GRANTED.

### D.     Plaintiffs' Express Warranty Claims Are Not Well-Pleaded.

FCA asks the court to dismiss Plaintiffs' express warranty claims because Plaintiff fails to allege a breach of the warranties. D.I. 29 at 15. The express warranties cover only defects in material, workmanship, or factory preparation. D.I. 24 ¶¶ 172-74. Plaintiffs' claims are based on a design defect. While Plaintiffs state that the Defect is caused by "design, manufacturing, material, and/or workmanship," the Court agrees with FCA that the allegations in the Complaint make clear that the alleged Defect is one of design, not manufacture or workmanship. D.I. 24 ¶ 6, 7, 141, 147.

Indeed, Plaintiffs' allegations of manufacturing defects go no further than the conclusory statement that there may be a manufacturing defect, and Plaintiffs allege that the defect is due to a "specially designed" "Multi-Displacement System" present in every engine, that the Defect plagues all vehicles equally, and that the Defect is "inherent and uniform." D.I. 24 ¶¶ 1, 4, 6, 10, 129, 132, 142. These allegations are highly specific and expressly allege that the "design and

17

specifications for collateral integral components of the MDS do not take into account the stress cylinder deactivation places on these components." D.I. 24 ¶ 147.  Moreover, Plaintiffs do not allege that their vehicles "perform[] differently from other ostensibly identical units of the same product line," but instead allege that "the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017).  In light of these allegations, the Court agrees that the Complaint pleads only an uncovered design defect.  Therefore, Plaintiffs' express warranty claims fail.

Accordingly, FCA's motion to dismiss Plaintiffs' claims for breach of express warranty is GRANTED.

### E.    The Implied Warranty Claims Are Well-Pleaded.

FCA moves to dismiss the implied warranty claims on the grounds that Plaintiffs have not pleaded that their vehicles were unmerchantable and that those claims are time-barred.  D.I. 29 at 18.  FCA also argues that the Illinois-based claims fail for lack of privity, and the Louisiana Redhibition claim fails because Plaintiffs' LPLA claim fails.  *Id.* at 18-19.

To be merchantable means "fit for the ordinary purposes" for which the good is used.  UCC § 2-314(2).  Ordinary car buyers expect that a car provides transportation in "a reasonably safe and reliable manner." *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 675 (E.D. Mich. 2020). Plaintiffs have pleaded that the Defect causes critical components of the vehicles to fail, creating a safety risk for Plaintiffs and requiring costly repairs.  D.I. 24 ¶¶ 9-11, 16, 20, 46-48.  While FCA suggests that the only harm Plaintiffs have alleged is a ticking noise, Plaintiffs have also alleged that their vehicles ran rough, would not start, and failed while driving.  *Id.* ¶¶ 89, 119.  There is at least a fact question as to whether a car with an elevated risk of failure while driving is fit for its ordinary purpose. *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 977 (N.D. Cal. 2018) (noting

that merchantability in vehicle defect cases is a fact-intensive issue).   Thus, Plaintiffs have adequately pleaded unmerchantability.

FCA contends that Plaintiffs' implied warranty claims are time-barred, because Illinois, New Hampshire, and Texas subject implied warranty claims to the same statute of limitations as express warranty claims.  D.I. 29 at 18.   As discussed in Section III(B)(4), *supra*, Plaintiffs have adequately pleaded that the statute of limitations was tolled via fraudulent concealment.   The "adjudication of a limitations defense at the pleading stage is particularly inappropriate where, as here, factual issues relating to concealment of the defect by the defendant potentially could impact whether it is estopped from asserting the limitations defense, or whether other exceptions to the defense could apply."  *Gant v. Ford Motor Co.*, 51 F.Supp.3d 707, 714 (E.D. Mich. 2021).   Thus, Plaintiffs' implied warranty claims are not time-barred at the pleading stage.

FCA suggests that Plaintiffs' claims under Illinois law fail for lack of privity.  D.I. 29 at 19.   In Illinois, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty."  *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 525 (7th Cir. 2003).   Plaintiffs Petro and Stalling purchased their vehicles from third-party dealerships.  D.I. 24 ¶¶ 95, 111.  "There is no contractual privity between a manufacturer and a person who buys from an independent dealer."  *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022).   However, Illinois recognizes exceptions to the privity requirement for direct contact and third-party beneficiaries.  *Id.* (direct dealing);  *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. 1980) (third-party beneficiaries).   Plaintiffs allege both that they had direct contact with FCA and that consumers were an intended third-party beneficiary of contracts FCA made with its dealers.  D.I. 24 ¶¶ 126-28, 206-12, 272-73, 316-17, 336-37.  While FCA contends that these allegations are conclusory, when taken as true Plaintiffs' allegations set

out detailed allegations of direct contact via the warranties.  *See, e.g.*, *id.* ¶¶ 206-12 (discussing specific communications allegedly from FCA, including "Monroney stickers," "warranties [that] were designed for and intended to benefit the consumers only," "booklets" telling consumers to contact FCA US headquarters to resolve issues, and other detailed allegations).  Whether a manufacturer is in privity with a consumer is a fact-intensive question in vehicle cases.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *37 (E.D. Mich., Sept. 30, 2022) (declining to resolve privity at summary judgment).  At this stage, Plaintiffs' non-conclusory allegations are sufficient to survive dismissal.

Finally, FCA suggests that Louisiana redhibition claims rise and fall with LPLA claims. D.I. 29 at 19.  However, "[w]hile the LPLA is the exclusive remedy against manufacturers for damages resulting from a defective product, a manufacturer can still be liable for damages in redhibition." *Aucoin v. S. Quality Homes, LLC,* 984 So.2d 685, 691 n.8 (La. 2008).  LPLA claims and redhibition claims are thus independent.

Accordingly, FCA's motion to dismiss Plaintiffs' claims for breach of implied warranty is DENIED.

### F.    The MMWA Claim is Properly Pleaded.

Plaintiffs' MMWA claim rises and falls with its state-law warranty claims.  D.I. 42 at 8. Thus, for the reasons discussed above, FCA's motion to dismiss Plaintiffs' MMWA claim is DENIED. *See* Section III(E), *supra.*

### G.     The LPLA Claim Is Properly Pleaded.

FCA asks the Court to dismiss Plaintiffs' LPLA claim because that claim is time-barred and because Plaintiffs' have not pleaded an unreasonably dangerous product. D.I. 29 at 19-20.

Under the LPLA, a manufacturer is liable for damages caused by an unreasonably dangerous product. *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 2021 WL 2853069, at *12 (E.D. La. 2021). Whether a design is unreasonably dangerous is a question of fact. *Thibodeaux v. Wellmate*, 190 F.Supp.3d 566, 574 (E.D. La. 2016). Plaintiffs allege a design defect that results in a risk of the car stopping while driving. D.I. 24 ¶ 366 ("[T]he Defect and its associated safety risk put drivers, passengers, and other motorists at risk for injury due to sudden engine failure or shutoff while the vehicle is in motion"); *see also* D.I. 24 ¶¶ 119, 142-151, 366-68. Defendants contend that Plaintiffs' allegations are too conclusory, but Plaintiffs have provided significant detail regarding their allegations of a design defect. *See* Section III(D), *supra*; *cf. Kendedy v. Pfizer, Inc.*, 2013 WL 4590331, at *4-5 (W.D. La. Aug. 28, 2013).

Louisiana has a one-year prescriptive period from the date the buyer discovers the alleged defect. *In re Chinese-Manufactured Drywall Products Liability Litig.*, 2022 WL 326635, at *3 (E.D. La. February 3, 2022). Louisiana recognizes the doctrine of fraudulent concealment as tolling the statute of limitations. *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 1995 WL 714441, at *3 (E.D. La. Dec. 4, 1995). Plaintiffs' allegations of fraudulent concealment, discussed at length above, are bolstered here by the allegation that FCA and its dealer specifically refused repair. D.I. 24 ¶¶ 88-90. Taken together, Plaintiffs' allegations are sufficient at this early stage of litigation. *See* Section III(B)(4), *supra*; *Gant v. Ford Motor Co.*, 51 F.Supp.3d 707, 714 (E.D. Mich. 2021).

Accordingly, FCA's motion to dismiss Plaintiffs' LPLA claims is DENIED.

**H.     Plaintiffs' Nationwide Class Allegations Fail.**

FCA contends that Plaintiffs' nationwide class allegations should be dismissed.  D.I. 29 at 20.  "[N]amed plaintiffs cannot bring claims on behalf of putative class members unless they have standing to bring those claims themselves."  *Diaz v. FCA US LLC*, No. 21-CV-00906-EJW, 2022 WL 4016744, at *19 (D. Del. Sept. 2, 2022).   "When applied to the 'nationwide' claims here, where adjudication under state substantive law would necessitate recognition of claims as specifically arising out of states other than" those where Plaintiffs reside, Plaintiffs lack standing to bring claims on behalf of a nationwide class.  *Id.*  Plaintiffs' insistence that this issue be decided at the class certification stage, D.I. 38 at 20, is "unfounded on any binding rule."  *Diaz*, 2022 WL 4016744, at *19.  "Though some courts, including this one, have delayed their consideration of the issue of standing until a motion for class certification is made, this order of decision-making is not rigid."  *Id.*  Plaintiffs do not contend that they have standing to bring claims on behalf of consumers in states in which they do not reside, D.I. 38 at 20, so Plaintiffs' nationwide class allegations should be dismissed.

Accordingly, FCA's motion to dismiss Plaintiffs' nationwide class allegations is GRANTED.

**IV.     CONCLUSION**

For the foregoing reasons, FCA's Motion to Dismiss (D.I. 28) is GRANTED-IN-PART and DENIED-IN-PART.  An appropriate Order will follow.